## DOCKERY et al. v. DURHAM.   (No. 574.)*

Court of Civil Appeals of Texas. Waco. Nov. · 3, 1927.

Rehearing Denied Dec. 22, 1927.

I. Evidence ☞5(2)—It is common knowledge that there are usually defects in titles of applicants for loans on realty.

It is a matter of common knowledge that there are usually defects required to be corrected in the titles of applicants for loans on realty.

2. Brokers ☞54—Contract to secure real estate loan held to contemplate readiness to complete loan within 20 days after furnishing of abstract.

Contract to secure real estate loan, reciting applicant's agreement to furnish abstract of title as soon as broker advised him of approval

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction.

of application, and, "if within 20 days thereafter you shall be ready to complete the loan," to pay for services rendered, *held* to contemplate readiness to complete loan within such time after abstract was furnished, not after applicant was notified of approval of application.

**3. Brokers ⬅54—That agent notified applicant for real estate loan that application "had been approved," after being notified that it "would be approved," held immaterial in action for commission.**

That agent, through whom application was made for real estate loan, notified applicant that application "had been approved" after being notified only that it "would be approved," *held* immaterial in such agent's action for commission, which applicant agreed to pay if agent was ready to complete loan within 20 days after abstract of title was furnished, not within such time after notice of approval of application.

**4. Brokers ⬅49(3)—Approval of application for loan, held not conditional, so as to defeat recovery of commission for procuring loan.**

Insurance company's approval of application for real estate loan by letter stating that it would be approved subject to satisfactory title, plat showing buildings within lot lines, and understanding that improvements are to be completed and paid for as represented, free from mechanic's lien claims, *held* not conditional, so as to defeat recovery of commission by its agent for securing loan; such conditions being substantially contained in application and necessarily incident to closing loan.

**5. Brokers ⬅49(3)—As respects right to commission, approval of loan application ordinarily means only conditional willingness to loan.**

Approval of application for loan ordinarily means only a willingness to make loan for amount wanted, on security offered, for time asked, and on terms for repayment, rate of interest, etc., specified in application, on condition that applicant do certain things, such as furnishing of abstract of title to security clear of incumbrance, execution of proper papers, etc.

**6. Brokers ⬅86(1)—Evidence held to sustain finding that one contracting to secure real estate loan was prevented from completing it within agreed time by applicant's failure to furnish abstract of title.**

In agent's action for commission for securing real estate loan from his insurance company, evidence *held* to sustain jury's finding that plaintiff was prevented from completing loan within time agreed on by defendants' failure to furnish abstract of title.

**7. Contracts ⬅303(4)—Party whose wrongful failure to perform contract renders performance by other party impossible cannot escape liability.**

Party to contract will not be permitted to take advantage of his own wrongful failure to perform his part, thereby rendering performance by other party impossible, and then escape liability.

**8. Brokers ⬅63(1)—Agent ready to complete real estate loan, except for applicant's failure to furnish abstract of title as agreed, held entitled to commission.**

Agent doing great deal of work to secure loan from insurance company before latter's approval of application, and ready to close loan, as provided in contract to secure it, had other party thereto furnished abstract of title as agreed, should be regarded as having fully performed, so as to entitle him to recover commission.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by C. K. Durham against Elanna S. Dockery and husband. Judgment for plaintiff, and defendants appeal. Affirmed.

Taylor, Atkinson & Farmer and W. C. Taylor, all of Waco, for appellants.

Weatherby & Rogers, of Waco, for appellee.

STANFORD, J. This suit was by appellee to recover of appellants Elanna S. Dockery and husband, T. B. Dockery, $2,000 alleged to be due as a commission under the terms of a contract between appellants and appellee's assignor, Theo Pinson, by the terms of which appellee and Theo Pinson undertook to secure a loan of $100,000 for appellants. In response to special issues the jury found: (1) The plaintiff and Theo W. Pinson were in a position to secure for the defendants the $100,000 in accordance with the agreements made on March 8 and 9, 1926. (2) The plaintiff, C. K. Durham, and Theo Pinson were prevented from completing the loan within the time agreed upon by the failure of the defendant Elanna S. Dockery to furnish satisfactory abstract of title.

On these findings of the jury, and such findings as the court was authorized under the pleadings and evidence to make, he rendered judgment in favor of appellee, C. K. Durham, against appellants Elanna S. Dockery and husband, T. B. Dockery, for $2,000, and appellants present the record here for review. A more complete statement of the case will be made in our disposition of appellants' assignments.

Under their first assignment, appellants contend the court erred in refusing to instruct a verdict in their favor. The record discloses that the Massachuetts Mutual Life Insurance Company of Springfield, Mass., on the dates hereafter referred to, was engaged in making loans on real estate in Texas, and had a state agency at Dallas, Tex., and a state inspector, to wit, Theo W. Pinson, whose office was at Dallas, Tex. Appellee, C. K. Durham, at said time was local representative in Waco for said insurance company, or its Dallas agency, and through said Dallas agency, assisted by ap-

pellee as local agent, said insurance company had made many loans on real estate in Waco. On and prior to March 8, 1926, appellant Elanna S. Dockery, wife of appellant T. B. Dockery, was the owner in her own right, as her separate property, of certain business property located at the southwest corner of Sixth and Washington streets, and on and prior to said date M. A. Cooper held a first mortgage lien on all of said property to secure $75,000, due April 1, 1928, bearing 9 per cent. interest per annum, payable semiannually, and a year's interest was past due. On several occasions prior to March 8, 1926, both appellants discussed with appellee the matter of getting a loan from said insurance company for $100,000 at 6 per cent., said amount to be used in paying off the M. A. Cooper loan of $75,000, and the remainder to be used to place two other buildings on said property, and to repair other buildings already on same. Appellee, after carefully going through all the buildings and examining said property, told appellants he was quite sure he could get the loan they desired, to be used as they had stated, etc., and on March 8, 1926, appellee took appellants' application to the Massachusetts Mutual Life Insurance Company for said $100,000 at 6 per cent., and told both appellants at the time he took said application that his brokerage would be 2 per cent. cash for getting said loan. After the application was executed appellee phoned Theo W. Pinson, the inspector at Dallas. Mr. Pinson came over and inspected the property and approved the loan, and took the application and sent it into the Dallas office, and the Dallas office sent it on to the home office at Springfield, Mass. The application for the loan was placed in evidence and was in the usual form, on a blank prepared by the loan company, stating the loan desired, security offered, rate of interest, length of time desired, purpose for which money was to be used, applicant agreeing to carry insurance, to furnish abstract at his own expense showing good title clear of all liens, and agreeing to pay for recording all necessary papers, etc. In fact, the application gives all details and covers all possible features of the loan. On March 9, 1926, appellant Elanna S. Dockery executed a written instrument covering the matter of the 2 per cent. brokerage, as follows:

"Dallas, Texas, March 9, 1926.

"Theo W. Pinson, Dallas, Texas—Dear Sir: You are hereby authorized to procure for me a loan of one hundred thousand dollars ($100,-000.00) bearing interest at 6 per cent. per annum payable semiannually, to be secured by first mortgage on the following described real estate, situate in the city of Waco, state of Texas, and being 165 ft. on Washington St. and 165 ft. on North 6th St.

"I agree to furnish you, at my own expense, a satisfactory abstract of title as soon as you advise me of the approval of my application for a loan, and if within 20 days thereafter you shall be ready to complete said loan, I agree to pay you for services rendered in that behalf the sum of two thousand dollars ($2,000.00); also to pay for recording mortgage and all other instruments required. It is understood and agreed that the first payment of interest becoming due under the notes and mortgage given to secure the loan herein mentioned shall be computed from the date of the check or draft sent by the mortgagee for settlement of the loan.

"[Signed] Elanna Streeter Dockery."

The above instrument was admitted in evidence. The same provisions in regard to paying for recording instruments, and for the time from which interest shall be computed, contained in the above instrument, are also in the application. C. E. Fifield, superintendent of loans for the Massachuetts Mutual Life Insurance Company, testified that all applications for loans are first passed upon by the examiner in the field, and are then forwarded to the home office at Springfield, Mass., and are examined by him, and, if approved, are initialed by him and then presented to the finance committee and acted upon by it. Said witness testified further:

"The Massachusetts Mutual Life Insurance Company had presented to it an application for a loan of $100,000 by Elanna Streeter Dockery, covering property in Waco, Tex., known as Nos. 114–126 North Sixth street and 600–612 Washington street. This application is signed by Elanna Streeter Dockery and bears date of March 8, 1926, and reached this office on March 16, 1926. This application was approved by Theo W. Pinson and was formally approved by me and bears my initials on the face thereof and was duly presented to our finance committee and approved by it on April 9, 1926. * * * Upon receipt of the application at this office on March 16, 1926, and after it had received my approval, and also the approval of William W. McClench, president of this company, I sent a telegram to Theo W. Pinson at our company's office in Dallas, Tex., in words as follows: 'Dockery application will be approved subject our usual requirements.' I also followed with the following letter: 'This is to advise you that the application of Elanna S. Dockery for a loan of $100,000 to cover property in Waco, Tex., will be approved, subject to a satisfactory title, a plat of survey to show the buildings to be within the lot lines and with the understanding that the improvements on the property are to be completed and paid for in accordance with representations made, free from mechanic's lien claims. You may forward the abstract of title for examination. Yours truly, O. E. Fifield, Supt. of Loans.'

"The letter dated March 18th, 1926, * * * and the telegram * * * bearing same date, were sent by me and represented the action of the Massachusetts Mutual Life Insurance Company in passing upon the said Dockery application, and I had the authority to send the said letter and telegram. If the conditions stated in the said letter dated March 18, 1926,

* * * had been complied with, the company would have been ready to complete the proposed loan to the applicant, Mrs. Elanna S. Dockery, and paid over the sum of $100,000 in accordance with the said application for the loan. Said applicant or her husband, T. B. Dockery, did not comply with the conditions set forth in my letter and furnish us with the abstract of title and other papers called for, so that we could proceed and complete the loan."

The telegram and letter mentioned above, which were introduced in evidence, were duly received by Theo W. Pinson at Dallas, and were at once sent to appellee; and appellee, on March 18, 1926, telephoned appellants that he had an acceptance of the loan and wanted the abstract. The next morning appellee went to the office of appellants and requested them to get the abstract at once, and they said they would get it from Mr. Cooper and bring it to him. The record discloses that appellee on several dates between March 18th and 29th requested appellants to get the abstract for him so he could send it to the company for examination, and that each time appellants promised to get the abstract without delay. Appellee also had the property surveyed and fieldnotes and a plat made, showing the building within the lot lines, and had a photographer to take a picture of the buildings, so as to have these all ready to be sent to the company with the abstract. Appellee testified further, in substance, that on March 29th Mr. Dockery came to appellee's office and told him that if he did not get the abstract by Saturday he would have one made and bring to appellee. In none of these conversations in which appellee was requesting the abstract and appellants were promising to furnish same, did appellants notify appellee that they were not going to take the loan, but on April 1, 1926, appellee learned from another source that appellants were getting their loan from Mr. Cooper, the papers being already drawn and ready for execution by the Dockerys, and on the next day, April 2, 1926, their deal was closed, procuring their loan from Mr. Cooper. Appellee testified further:

"The reason why I did not complete the loan within 20 days was because I could not get the abstract of title from the Dockerys. I could have closed the loan if they had furnished me with satisfactory abstract of title; I could not make any further move in the matter without the abstract of title."

There is no contention but that the property offered as security for said loan was the separate property of Mrs. Dockery, and that said loan was sought for the benefit of her said separate property. The brokerage contract was made between appellants and Theo W. Pinson, but appellee assisted Pinson as his agent in the performance of his part of said contract, and on May 1, 1926,

for a valuable consideration, Theo W. Pinson assigned all his rights under said contract to appellee. This assignment was put in evidence, and there is no contention but that appellee is entitled to all the rights under said contract that Theo W. Pinson acquired.

[1, 2] We have outlined briefly the evidence offered by appellee. Appellants offered no evidence, and at the conclusion of appellee's evidence, requested a peremptory instruction in their favor, and contend the court erred in refusing to so instruct because appellee's evidence fails to show that appellants' application for said loan was ever approved by the loan company or if ever approved it was not approved by April 1, 1926. The contract as shown by the record did not require appellee or his assignor, Pinson, to be ready to complete the loan by April 1, 1926. The contract recites:

"I agree to furnish you, at my own expense, a satisfactory abstract of title as soon as you advise me of the approval of my application for a loan, and if within 20 days thereafter you shall be ready to complete the loan, I agree to pay you for services rendered in that behalf the sum of $2,000."

[3] In passing upon the application, the abstract was not needed, for in so doing the loan company considered only such matters as were stated by the applicant in such application. But if the application was approved, then the abstract became very important, in order to determine if the applicant had title to the security offered, and if clear of incumbrances, etc., and it is a matter of common knowledge that although the applicant has title there are usually defects required to be corrected. We think the clear meaning and evident intention of the parties as expressed in the contract herein was that the 20 days within which appellee or his assignor had to be ready to complete said loan began from the date the abstract was furnished, and not necessarily from the time appellants were notified of the approval of their application. If appellants had furnished the abstract on March 18, 1926, the day they were notified of the approval of the application, as they had obligated themselves to do, then the 20 days would have run from said date. But in view of the fact that after the approval of the application appellee could proceed no further without the abstract, to hold that the parties intended the 20 days should date from the date of notice of approval to appellants, regardless of whether or not they furnished an abstract, would be to hold that the parties intended that appellants should have the right to annul said contract at their pleasure by simply failing to do what they had obligated themselves to do. There is no question but that the application was approved by the state inspector of the Dallas office and by the superintend-

ent of the loan department and the president of the company, both of the Springfield, Mass., office of said company, prior to March 18, 1926, and by the finance committee of said' company on April 9, 1926. If the abstract had been furnished at any time after March 18, 1926, the loan could have been closed within the time provided by the con-. tract. One of the obligations of the appellants was to furnish the abstract as soon as notified that the application was approved. They were notified of such approval on March 18, 1926. The evidence, we think, is ample to show that if appellants had furnished the abstract on said date, as they agreed to do, appellee and his assignor would have been ready to close said loan within 20 days thereafter. Appellee so testified, and the superintendent of the loan department of said company, in effect, so testified. But appellants contend that on March 18, 1926, appellee had not been notified that the application "had been approved," but that it "would be approved," and that appellee wrongfully notified them that said application had been approved. We think it was immaterial which form of statement was used in notifying appellants. It was not securing an approval of the application that entitled appellee to the commission, but it was being in position to close said loan within 20 days after the abstract was furnished, which appellants agreed to furnish as soon as they were notified by appellee that the application was approved.

[4, 5] Appellants contend further that the approval of their application was conditional; that it was not unconditionally accepted, etc. The telegram and letter of March 18th, which were sent by the superintendent of the loan department from the home office, with the approval of the executive officers of said company, stated that the application would be approved, "subject to a satisfactory title, a plat of survey to show the buildings to be within the lot lines and with the understanding that the improvements on the property are to be completed and paid for in accordance with representations made, free from mechanic's lien claims." We do not think this letter of approval prescribed anything additional or imposed upon appellants any additional obligation other than what they had already in said application agreed to do. They had in such application agreed to furnish an abstract showing good title. In the application they had stated, in substance, that the buildings were within the lot lines. A plat to show this to be true certainly did not impose any new obligation. ⁻ Appellee Durham had the survey and plat made at his own expense. Appellants in said application had represented that there were no liens against said property, except $75,000 to M. A. Cooper, and that the loan was wanted to pay Cooper's loan, and that the remainder, $25,-

000, was to be used in making certain improvements, and, of course, to be paid for with this excess. So the statement that the improvements on the property were to be "completed and paid for in accordance with representations made, free from mechanic's lien claims," clearly imposed no new undertaking on the part of appellants. The above conditions as set forth in said letter were, in substance, contained in the application, and were conditions necessarily incident to closing the loan applied for. The approval of an application for a loan ordinarily means, and did mean in this case, only a willingness to make the loan for the amount wanted, on the security offered, for the time asked, and on the terms for repayment, rate of interest, etc., specified in the application, upon condition that the applicant performs certain things, such as furnish an abstract showing he owns the security offered and has good title to same, clear of incumbrance, etc.; that he will execute the proper papers, carry insurance for the benefit of the mortgagor, etc. From the very nature of the transaction, the approval of an application for a loan is invariably conditioned upon the performance of certain things by the applicant, usually specified, as in this case, in the application.

[6] Appellants contend the contract required appellee's assignor to procure the loan by April 1, 1926, but, we think, clearly there is no evidence to sustain this contention. Appellants obligated themselves to furnish the abstract as soon as they were notified of the approval of the loan, and appellee's assignor obligated himself to be ready to close the loan twenty days after the abstract was so furnished. However, the evidence is ample to show that if appellants had co-operated with appellee's assignor by furnishing the abstract on March 18, 1926, when they were notified of the approval of the loan, as they had obligated themselves to do, the loan could and doubtless would have been closed by April 1, 1926. Appellants never complained of delay in getting the loan, and never gave any reason for not taking it, but continuously, from March 18, 1926, promised to furnish the abstract, and as continuously failed to do so, even promising to furnish such abstract right up to only a few days before they closed their loan with M. A. Cooper. We think the evidence is ample to sustain the finding of the jury to the effect that appellee and his assignor were prevented from completing the loan within the time agreed upon by the failure of appellants to furnish the abstract of title. As above stated, appellants were notified on March 18, 1926, of the approval of the application, and if they had then furnished the abstract, as they had obligated themselves to do, we think appellee and his assignor would have been ready to close said loan within the time agreed upon.

But appellants blocked any further progress toward closing said loan by their wrongful conduct in failing to furnish such abstract, and notwithstanding numerous promises to do so, continued to fail to furnish such abstract until they closed their loan with another party.

[7, 8] One party to a contract will not be permitted to take advantage of his own wrongful failure to perform his part, thereby rendering performance by the other party impossible, and then escape liability. The appellee and his assignor, as shown by the record, had done a great deal of work in the matter of securing the loan, prior to the approval of the application. In fact, there was but little more to be done, as shown by the evidence of appellee. But appellants, by their refusal to furnish the abstract, rendered further performance by appellee and his assignor impossible, and as the evidence is sufficient to show that if appellants had furnished the abstract as they were legally bound to do, appellee and his assignor would have been ready to close said loan as provided in the contract, appellee and his assignor should be regarded as having fully performed, and appellee is entitled to recover as provided in the contract. Smith v. Lipscomb, 13 Tex. 532; Marvin v. Rogers, 53 Tex. Civ. App. 423, 115 S. W. 863; Consumers' Grocery Co. v. Comensky, 299 Mo. 43, 252 S. W. 420; Kersey v. Garton, 77 Mo. 647; Levy & Hipple Motor Co. v. City Motor Cab Co., 174 Ill. App. 111; 13 C. J. p. 647, §§ 721, 722, and cases cited.

We have considered all of appellants' assignments, and, finding no reversible error, overrule same and affirm the judgment of the trial court.