## Z. E. MARVIN v. RUSSELL V. ROGERS.

### Decided January 23, 1909.

**1.—Contract—Implied Covenant—Performance Contingent on Future Event.**

Where a contract is made which is performable at the time of the occurrence of a future event, the law imputes to the promisor an agreement that he will put no obstacle in the way of the happening of that event, and that he will hold himself in readiness to co-operate where his co-operation is a necessary element in the happening of the contingency. If, in violation of this implied covenant on his part, he does something which prevents the happening of the event, the contract becomes absolute and must be performed as if the event had occurred.

**2.—Same.**

Where the president of an incorporated mercantile company purchased certain shares of the stock whereby he became the holder of a majority of the stock, and as part of the consideration obligated himself to pay a certain sum to the seller so soon as the company secured a new lease of the premises then occupied, and then voluntarily sold the store and the right of possession of said premises, thereby preventing the happening of the contingency, his obligation became absolute, whether he himself prevented the performance of the implied covenant or induced and prevented its performance through the company; and it was immaterial that in bringing about the sale he acted in good faith in the interest of the company.

**3.—Same—Charge—Weight of Evidence.**

An instruction that the mere expectancy by the promissor that the company would not be permitted to remain in the store, if he had such expectancy, did not justify him in selling the store unless such expectation proceeded from the landlord or notice to vacate, held correct and not on the weight of evidence.

Appeal from the County Court of Dallas County. Tried below before Hon. W. M. Holland.

*Etheridge & McCormick,* for appellant.—There is in the obligation sued on no covenant or warranty, express or implied, that the Owl Drug Company would occupy the premises for the ten months next

ensuing, nor that plaintiff as director, president or executive manager would not voluntarily consent to or be the instrument in negotiating, and on behalf of the company perfecting a sale. 2 Parsons Contracts, 7th ed., page 509, note Y; Morris v. Bank of Commerce, 67 Texas, 604; Grubbs v. Blum, 62 Texas, 426; Strasburger v. Heidenheimer, 63 Texas, 5; Huntington v. Russell, 8 Pac., 511.

The identity of the corporation and its acts is distinct from the person and personal acts of its shareholders, president and executive manager, nor can the act of the president or executive manager, who is also the majority shareholder, when he acts for the corporation in respect to its property, be held in law to be his personal act, as well as the act of the corporation. 26 Am. & Eng. Enc. Law, 2d ed., p. 901 et seq. and cases cited.

The appellant, as an officer and president of the Owl Drug Company, was a trustee for its stockholders and bound to act in its interest and had the right (because it was his duty) to make a sale of its drug store No. 1 under the instructions of its board of directors and as the act of the company, if, in making such sale, he was acting in good faith to the company, uninfluenced by any intent to wrong the appellee.

*Rhodes S. Baker*, for appellee.

BOOKHOUT, Associate Justice.—Appellee sued appellant to recover on an alleged promise of the appellant, dated September 20, 1906, to pay appellee five hundred dollars, "payable as soon as Owl Drug Company, or anyone for it, secures a new contract of lease, or one extending its present lease on its store No. 1, at corner of Main and Ervay Streets, in the city of Dallas, Texas, or when it shall have held possession of said premises under existing lease, or new lease, or otherwise, for ten months from this date." The allegation of the petition was that the happening of the event upon which the condition depended was prevented by appellant as the president and executive manager of the Owl Drug Company in selling said store No. 1. The petition further alleged as another ground of recovery a subsequent promise on the part of appellant to pay the obligation unconditionally. The appellant answered by demurrers, all of which were overruled, by general denial and by a plea that contemporaneously with the obligation sued on, appellant had purchased from appellee shares of stock in the Owl Drug Company on an agreed valuation of nine thousand dollars should store No. 1 not be occupied for ten months thereafter, and nine thousand five hundred dollars if the stand should be occupied during said ten months. That the Owl Drug Company in good faith attempted to secure an extension of the lease, or a new lease, or the right to occupy the premises for ten months, but was unable to do so, and was notified that the property would likely be torn down and rebuilt, and, with this information, sold the store on or about January 10, 1907. There was a further plea of estoppel. The case was tried before a jury and resulted in a verdict and judgment against appellant, from which he prosecutes this appeal.

The first assignment of error challenges the correctness of a paragraph of the court's charge as follows: "You are instructed that if you find and believe from the evidence that defendant was the president and executive manager of the Owl Drug Company, and that said defendant as such president and executive manager of said Owl Drug Company, acting for himself and said Owl Drug Company, did voluntarily sell store No. 1 and did assign to the purchasers thereof the possession and right of possession to the premises occupied by store No. 1, and that but for said acts, if any, of defendant, it is reasonably probable that said Drug Store could have continued to occupy said store No. 1 for a period of ten months from September 20, 1906; or, if you find and believe from the evidence that defendant expressly and unconditionally agreed and obligated himself for and in consideration of plaintiff's executing a release of the mortgage lien held by plaintiff on certain furniture and fixtures of said Owl Drug Company, to pay said note within a reasonable time from the execution by plaintiff of said release, and you further find that plaintiff for said consideration did execute said release, then you will find for the plaintiff for the full amount of the note sued on, with interest and ·attorney's fees as provided therein, unless you should find for the defendant as hereinafter charged."

The proposition presented is, that there is in the obligation sued on no covenant or warranty, express or implied, that the Owl Drug Company would occupy the premises for the ten months next ensuing, nor that plaintiff as director, president or executive manager would not voluntarily consent to, or be the instrument in negotiating, and on behalf of the company perfecting a sale

The obligation sued on is as follows:

                                    "Dallas, Texas, September 20, 1906.

"$500.00.

"For value received, I, we, or either of us, promise to pay to the order of Russell V. Rogers Five Hundred Dollars—$500.00—with semi-annual interest at the rate of eight percent per annum from date until paid, and ten percent additional on amount of principal and interest unpaid, for attorney's fees, if placed in the hands of an attorney for collection. Said sum aforesaid is payable as soon as Owl Drug Company, or anyone for it, secures a new contract of lease, or one extending its present lease, on its store No. 1, at corner of Main and Ervay Streets, in. the city of Dallas, State of Texas, or when it shall have held possession of said premises under existing lease, or new lease, or otherwise, for ten months from this date. Said Russell V. Rogers to aid in the premises, should opportunity arise. This note being given as part consideration of purchase of the stock of said Rogers in said company. Z. E. Marvin."

The Owl Drug Company is a corporation. Prior to the execution of this obligation appellant, Z. E. Marvin, was the owner of forty-nine percent of the stock in the Owl Drug Company's store No. 1, situated at the corner of Main and Ervay Streets in the city of Dallas, and on the day of the date of the obligation sued on Russell

V. Rogers sold him fifty-one percent of the entire stock of the company and he thus became the owner of all the stock. Marvin placed some of the stock with other parties, but he remained the owner of the majority of the stock, was president and the executive manager of the company, and voluntarily sold store No. 1 and assigned to the purchasers the possession and right of possession to the premises occupied by said company. The verdict of the jury under the charge of the court embraces findings as follows: That if the sale had not been made, it is reasonably probable that Owl Drug Company could have continued to occupy the store in question for a period of ten months following September 20, 1906. That in consideration of plaintiff's executing a release of the chattel mortgage held by him covering certain property of the Owl Drug Company, the defendant unconditionally obligated himself to pay the note sued on within a reasonable time after plaintiff's execution of said release; and that plaintiff for this consideration did execute the release in question; that the sale by defendant of the store referred to in the note sued on was not made because of the inability, if any, of the drug company to secure a new lease, or because of its inability, if any, to secure an extension of its existing lease, or because of its inability, if any, to remain in the premises in question with the consent of the landlord for a period of ten months following September 20, 1906; but was made for the express purpose of preventing the drug company from occupying the premises during the period covered by the note in suit. Besides these findings upon the disputed facts, the undisputed facts show that the note in suit was executed by the defendant as part of the price appellant was paying for plaintiff's stock in the drug company; that at the time it was executed defendant was the dominating influence in the drug company and holder of practically all its entire capital stock. At the time of the sale the defendant was its president, its manager, and its principal director. The other directors were men employed by defendant and subject to discharge by him and necessarily under his domination and control. The defendant admitted that he had the direction of the drug company, and that it never failed to do what he recommended. The directors approved appellant's scheme to sell the store. The stockholders never authorized the sale. The purchasers did immediately after their purchase obtain a new lease for a term of thirty-five months following February 1, 1907, and with their assigns have held possession of the store building continuously since their purchase.

It seems clear that where a contract is made which is performable at the time of the occurrence of a future event, the law imputes to the promisor an agreement that he will put no obstacle in the way of the happening of that event, and that he will hold himself in readiness to cooperate where his cooperation is a necessary element in the happening of the contingency. If, in violation of this implied covenant on his part, he does something which prevents the happening of the event, the contract becomes absolute and must be performed as if the event had occurred. (Bradley v. Benjamin, 46 L. J., Q. B., 590; Jones v. Walker, 13 B. Monroe, 163, 56 Am,

Dec., 557; Dill v. Pope, 29 Kans., 289; Wolf v. Marsh, 54 Cal., 228; Bolles v. Sachs, 33 N. W., 865; Teachenor v. Tibbals, 86 Pac., 483.)

The Bradley case, cited above, in principle is quite analogous to the present case. In that case the plaintiff, a tenant from year to year of premises, sold the good will of the business carried on there to defendants under an agreement which was to be void unless free and undisturbed possession should be guaranteed them. Subsequently, they promised to pay plaintiff 100 pounds if he procured them to be accepted as tenants by the landlord. While plaintiff was negotiating with the landlord, defendants transferred their contract of sale of the good will to another who entered into possession and was accepted as a tenant by the landlord. Upon action to recover the 100 pounds from the original purchasers of the good will, held: That the defendants having by their voluntary act of sale disabled themselves from receiving the benefits of the lease renewal for which they had agreed to pay, were liable to pay the 100 pounds to the plaintiff, unless they could prove that he could not have succeeded in getting them accepted as tenants if they had entered into possession as contemplated in the agreement.

The principle is well stated by Justice Brewer, while a member of the Supreme Court of Kansas, in deciding Dill v. Pope. A party purchased property at a stipulated price agreeing to pay for it on a certain condition. Thereafter such purchaser, by an act of his own volition, disabled himself from complying with the condition by selling the property. It was said: "By selling the interest defendant had purchased, he holding no other interest in the property and having no control or right to work it, disabled himself from ever complying with the condition upon which he was to make payment. The moment he did this, his conditional liability on the contract for the unpaid purchase money became absolute, and such purchase money became presently due. This is upon the well settled principle that a party to a contract can not interfere to prevent the performance of any condition and then claim any benefit or escape any liability from the failure of such performance."

But appellant insists that the sale of the Owl Drug Company was the act of the company—a corporation—and there is no evidence that in making the same appellant was acting for himself except insofar as he was a stockholder of the company. We have held that if the appellant put it out of the power of the drug company to comply with the covenant in the obligation sued on, then the contract became absolute; and if appellant, instead of himself putting it out of the power of the drug company to comply with the covenant, procured another to prevent the happening of the contingency, he is as much responsible as if he had individually prevented its happening. At the time of the sale appellant was the president, business manager and director of the drug company. He appears to have owned nearly all the stock of the company. He says the company never failed to do what he recommended. It is true that the obligation sued on contains no express covenant or warranty that the drug company will occupy the premises for ten months next ensuing, or that defendant as director, president or executive

manager would not voluntarily consent to, or be the instrument of negotiating, on behalf of the company a sale of its property. It does by necessary implication imply a promise that the defendant would do no act that would prevent the performance of the condition upon which the obligation sued upon was performable. The rule is that an implied promise always exists where equity and justice require the party to do or refrain from doing the thing in question; where the covenant on one side involves some corresponding obligations on the other; where by the relations of the parties and subject matter of the contract a duty is owing by one not expressly bound by the contract to the other party in reference to the subject of it; and where it may be rightfully assumed that it would have been made if attention had been drawn to it. (Genet v. President of Delaware & Hudson Canal Co., 32 N. E., 1078 (N. Y. Ct. of App.).)

We think it immaterial whether the defendant himself prevented the performance of the covenant in the obligation sued on, or whether he under the facts induced and prevented its performance through the Owl Drug Company.

The court did not err in refusing appellant's requested charge, reading: "You are instructed the undisputed evidence shows that the Owl Drug Company was, at the time of the sale of its store No. 1, a corporation duly incorporated, and that if you find from the evidence that the defendant, Z. E. Marvin, in making the sale of the said store of the Owl Drug Company, acted as an officer or agent of the Owl Drug Company, that then the sale was the act of the said corporation and not the individual act of the defendant, and he can not be charged with such act." As stated, at the time of the sale the appellant was the owner of nearly all the stock of the drug company, was its president, its business manager, and a director, and the company never failed to carry out what he recommended.

Nor do we think there was error in refusing appellant's special charge as follows: "If you believe from the testimony that in the sale of drug store No. 1 by the Owl Drug Company, the said company and the defendant acted in good faith in the interest of the business of the Owl Drug Company solely, and in view of the uncertain tenure shown by the undisputed evidence, under which said Owl Drug Company was occupying the premises in which it was conducting its drug store No. 1, and you further find from the testimony that said Owl Drug Company, nor the defendant, in making such sale were influenced by an intent to prevent the plaintiff from collecting the note herein sued on, then you are instructed that such sale did not in law make the defendant liable unconditionally to pay the obligation sued on herein." This charge seeks to excuse the appellant's acts in breaching the contract sued on, providing he was acting in good faith to the Owl Drug Company, which company was not a party to the suit. If the Owl Drug Company was induced to make the sale by the dominating influence of appellant, it was immaterial that in bringing about the sale he acted in good faith in the interest of the drug company.

The trial court refused appellant's requested charge No. 4 as follows: "You are instructed that the contract sued on does not bind the defendant by express terms or by implication that Owl Drug Company shall not during the ten months succeeding September 20, 1906, sell its drug store No. 1, and you are further instructed that if you believe from the testimony that in the sale of its drug store No. 1 said Owl Drug Company acted as a reasonably prudent person would have acted under the same circumstances in selling its drug store No. 1, and you further find from the testimony that the said sale made by Owl Drug Company of its said store was made in good faith and without intent thereby to prevent plaintiff from collecting the obligation sued on, you will find for the defendant, unless you further find from the testimony that the defendant subsequent to the date of the obligation herein sued on, for a valuable consideration, agreed with the plaintiff to pay the note sued on unconditionally." This action is assigned as error. This charge was properly refused. The good faith of the drug company, or its honest intent, or its prudent management of its corporate affairs, was not an issue under the pleadings tendered or the evidence offered. It had no bearing upon the issues in the case.

Complaint is made of the court's action in giving a special charge asked by plaintiff as follows: "You are charged that the mere expectation of the defendant, Z. E. Marvin, that Owl Drug Company would not be permitted to remain in said store, if he had expectation, did not justify him in selling or cooperating with others in the selling of said store No. 1, unless such expectation, if any, was caused by a demand from the agent of the landlord of said premises for possession of same, or notice to vacate within a definite time had been given said tenant by said agent." It is insisted that this charge is on the weight of the testimony. The substance of this charge is that the mere expectancy by defendant that the Owl Drug Company would not be permitted to remain in its store, if he had such expectancy, did not justify him in selling the store, unless such expectation proceeded from a demand from the landlord or notice to vacate. The charge was not on the weight of evidence and was proper. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*