## H. J. JOHNSON v. W. B. SHARP ET AL.

### Decided May 18, 1909.

**Contract—Performance Contingent on Future Event.**

Where one promises to pay another a given sum on the performance of a condition in the future, and renders the performance of the condition impossible, his obligation to pay at once becomes absolute.

Error from the District Court of Dallas County. Tried below before Hon. Thos. F. Nash.

*J. J. Eckford,* for plaintiff in error.

*U. F. Short,* for defendant in error.

BOOKHOUT, ASSOCIATE JUSTICE.—W. B. Sharp and T. J. Clark, as plaintiffs, instituted this suit against M. B. Johnson and H. J. Johnson to recover the balance of purchase money alleged to be due them for stock in the Dallas-Humboldt Oil Company, sold to them by said Johnsons. It was alleged in substance that plaintiffs were the owners of $300,000 of the capital stock of the Dallas-Humboldt Oil Company. That said company was in debt to them in the sum of $5,000 on account, and that it was indebted to other persons in small amounts of money. That plaintiffs were the lessees of certain lands from J. E. and E. E. Hamblin, which they had transferred to said company, and that Hamblin had sued to cancel the lease and sued for the possession of the land. That a number of wells had been sunk, and that said Dallas-Humboldt Oil Company contemplates sinking other wells. That H. J. Johnson and M. B. Johnson desired to purchase and have transferred to them the shares of stock which the plaintiffs owned in said company and the accounts due them from it, and plaintiffs and H. J. Johnson and M. B. Johnson entered into a contract in writing by which plaintiffs undertook to sell to defendants all their shares of stock in said company and all accounts due them from it, for the sum of $40,000, $20,000 of which was paid in cash. That defendants in said agreement agreed to pay and satisfy the debts due and owing from the said Dallas-Humboldt Oil Company to other parties, and to protect it in the possession of the lands leased from Hamblin. The defendants agreed to increase the number of wells already bored to twenty, and to pay the plaintiffs out of the product of said wells, after deducting cost of digging and other current expenses, the further sum of $20,000, with interest thereon at the rate of six percent per annum from the date of said sale, to wit, September 8, 1903. That no personal liability was to be imposed upon the defendants for the deferred installment of $20,000, but that if the wells failed to produce oil, in consequence of which the $20,000 and interest could not be paid from revenues derived from that source, that then the defendants were to return to plaintiffs the property sold unless they elected to pay the said sum of $20,000, with the interest thereon, as they had the right to do under said written agreement.

That said wells had never ceased to produce oil, but that defendants had sold all the shares of stock conveyed to them by plaintiffs by said written agreement, and all other property embraced therein, to innocent parties, and that by said sale they became bound to pay defendants the balance of the purchase money. according to said written agreement. Plaintiffs asked judgment for said sum of $20,000, with interest at six percent from the 8th day of September, 1903. M. B. Johnson was not served and the case was dismissed as to him. Plaintiff in error, H. J. Johnson, answered by general demurrer and special demurrer and general denial and special answer. The case was tried on the 15th day of June, 1907, and the court peremptorily instructed the jury to return a verdict against defendant for the sum of $20,000, with interest at six percent per annum from the 8th day of September, 1903, less a credit of $4,500 as of that date. Verdict was rendered accordingly and judgment entered therefor on the 15th day of June, 1907. Defendant prosecutes error.

*Opinion.*—On the 8th day of September, 1903, W. B. Sharp, by his attorney in fact J. N. Wharton, and T. J. Clark, styled in the contract parties of the second part. sold and conveyed to M. B. Johnson and H. J. Johnson, styled in the contract parties of the first part, all their interest, holdings, certificates of stock, and right to stock in the Dallas-Humboldt Oil Company of the State of Wyoming, and their claims against said corporation, said stock being of the face value of three hundred thousand dollars. The contract stipulated, among other things, the following: "The consideration to be paid said parties of the second part is as follows: Said parties of the first part to pay said parties of the second part, upon the execution of this contract, twenty thousand dollars in cash. Twenty thousand dollars additional is to be paid said parties of the second part out of the sale of oil produced from the property of said corporation, as hereinafter provided, and subject to the following: The proceeds of the sale of the company's part of all oil produced from the property shall be used: (1) In the payment of cost of development, until twenty wells have been brought in, including the nine wells already brought in; and it is agreed that said parties of the first part shall provide out of their individual funds such amount as is required, in addition to the returns from the property, to develop said property within the time provided for in said leases. The payment of the cost of development is to include any moneys that may be advanced by said parties of the first part for such purpose. (2) After that, all oil produced shall be sold, and the proceeds above royalties and necessary current expenses in producing said oil shall be paid to said parties of the second part, to the amount of twenty thousand dollars, together with six percent interest from the date of this contract, all payable at Dallas, Texas. Said parties of the first part shall use reasonable diligence and exercise reasonable skill in the care and development of the property embraced in the five leases described in paragraph at end hereof, and shall develop the same as provided in the said several leases belonging to the company; and if this is done, and the oil produced above royalties and necessary ex-

penses, as herein provided, after twenty wells have been brought in upon said property, shall not be sufficient to pay said $20,000, with six percent interest, or any or all of said amount, there shall be no personal liability on the part of said parties of the first part to said parties of the second part, for said $20,000 and interest or such part thereof as the proceeds of the oil, as above mentioned, are insufficient to pay. In the event the property of the said company ceases to produce oil before sufficient oil has been produced to pay said twenty thousand dollars and six percent interest, then the two-thirds interest hereby conveyed to said parties of the first part is to be returned to said parties of the second part, unless said parties of the first part exercise the option, which is hereby granted them, to pay off themselves any balance that may be due said parties of the second part by reason of the insufficiency of oil paying said twenty thousand dollars and six percent interest."

The evidence showed that the Johnsons had not paid the deferred payment of $20,000, but had sold the property purchased by them from Sharp and Clark and thereby put it out of their power to return the same. Not having paid the deferred payment, and having put it out of their power to return the property in satisfaction of the same, defendants became absolutely bound to pay the deferred payment in money. This was the ground upon which the trial judge instructed a verdict for plaintiffs. We are of the opinion that his action was based upon a sound principle of law. In a recent case by this court it was held that where one promises to pay another a given sum on the performance of a condition in the future, if the promisor renders the performance of the condition impossible, his obligation to pay at once becomes absolute. Marvin v. Rogers, 53 Texas Civ. App., 423, and authorities there cited.

The evidence shows that after all the property embraced in the sale was delivered to H. J. Johnson and M. B. Johnson, and without waiting to determine whether the wells would produce sufficient oil to pay the deferred installment out of the revenues from its sale, they sold the property and put it out of their power to comply with the contract by returning the property. In doing so they became absolutely bound to pay the defendants in error the entire purchase price.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.