## ROSE v. O'KEEFE.
### No. 1263—5658.

Commission of Appeals of Texas, Section B.
June 10, 1931.

Coke & Coke and Thomas G. Murnane, all of Dallas, for plaintiff in error.

Austin C. Hatchell, of Longview, and John Davis, of Dallas, for defendant in error.

LEDDY, J.

We adopt the following statement of the case made by the Court of Civil Appeals:

"Plaintiff in error R. W. O'Keefe owned property known as the 'North Texas Building' situated in the city of Dallas. The property was incumbered by a valid lien thereon to secure indebtedness amounting to more than $110,000. November 23, 1925, O'Keefe borrowed $36,500 of I. E. Rose, deceased husband of defendant in error, Mrs. Pauline Rose. At the time he borrowed the $36,500, O'Keefe made a promissory note to said I. E. Rose for $40,000, payable three years from its date (said November 23), and stipulating for interest payable semiannually as it accrued at the rate of 8 per cent. per annum from its said date; and at the same time executed and delivered a deed conveying the property mentioned to a trustee to secure the payment of the note according to its tenor and legal effect. O'Keefe paid the $1,600 interest due on the note May 23, 1926, according to its terms, and the $1,600 interest thereon due November 23, 1926, and on April 6, 1927, in conformity to an agreement between him and defendant in error (said I. E. Rose having died October 7, 1926, and defendant in error being the sole devisee of his estate, valued at $400,000, and independent executrix of his will), conveyed said North Texas Building property to her; the consideration of such conveyance being the cancellation of the $40,000 note, on which additional interest amounting to $1,200 had accrued, the payment of about $4,000 taxes due on the property, the payment of $2,774.65 in cash on his (O'Keefe's) account, and the assumption by her of the payment of his said indebtedness of about $110,000 and $3,300 interest accrued thereon secured by said first lien on the property. This suit by O'Keefe against Mrs. Rose, as an individual and as executrix aforesaid was on the theory that the contract covering the $36,500 loan was usurious within the meaning of the statute (title 79, R. S. 1925 [articles 5069–5074]), and that he therefore was entitled to recover of Mrs. Rose double the amount of the interest he paid in performance thereof, or, if he was not entitled to recover double the amount of such interest, was entitled to recover back the sum he had paid as interest.

"Mrs. Rose's contention at the trial was that the contract covering the $36,500 loan, evidenced by the note and trust deed referred to was not usurious, and that O'Keefe had not paid to her and her deceased husband on account thereof interest in excess of the amount they were lawfully entitled to demand and receive of him. She contended, further, that, if the contract covering said loan was usurious, and if O'Keefe had paid usurious interest thereon, his claim on account thereof was satisfied in the transaction wherein he conveyed the building referred to to her, and further, that O'Keefe was estopped from claiming the liability he was asserting against her.

"It appeared from evidence heard at the trial that in the negotiations for the loan of $36,500 O'Keefe acted by his agent, J. W. Ryan, and the jury found that Rose acted by his agents, J. R. Eldridge and F. L. Payton. The jury found further, in response to an issue submitted to them, that 'in executing the deed and in cancelling the note in April, 1927 (quoting), it was the intention of plaintiff R. W. O'Keefe that all the matters in controversy between the parties, including the usurious interest claim, if any, should be settled and satisfied by such transaction.' It was on the finding of the jury set out, it seems, that the court rendered judgment denying O'Keefe a recovery of anything and in Mrs. Rose's favor for costs."

The Court of Civil Appeals held that the submission of the issue as to whether O'Keefe's claim for usurious interest had been compromised and settled by the conveyance of the building to Mrs. Rose was not warranted by the pleadings or the evidence. Under this view it reversed the judgment of the trial court and rendered judgment in favor of O'Keefe against Mrs. Rose for $12,600, this sum being double the amount of the alleged usurious interest.

The fifth paragraph of the answer of plaintiff in error set forth in detail the transaction by which she purchased from defendant in error the building in consideration, among other things, of the cancellation of the $40,000 note executed by defendant in error. Then followed these averments: "These defendants further say that by virtue of the facts set forth in paragraph 5 herein they have fully paid and satisfied any and all claims pretended or otherwise that the said plaintiff may have against the said I. E. Rose and these defendants, and these defendants plead that accord and satisfaction has been had and taken place and that all claims of every kind arising out of said Forty Thousand Dollars ($40,000) insofar as the said Rose, deceased, and these defendants are concerned, have been fully satisfied and discharged; that no recovery can now be made of these defendants or any of them."

We think this pleading was clearly sufficient to present the issue as to whether the de-

fendant in error's claim for usurious interest was settled by his conveyance of the building to Mrs. Rose. The question then arises: Was there any evidence to sustain the jury's finding upon such issue?

Mr. O'Keefe on cross-examination testified as follows: "I wanted to pay my debts was the reason I wanted to sell this property to Mrs. Rose. There was a first lien against this property something like $125,000; I don't think this note was due; notices had not been posted to sell the property. I don't know it if they had been posted. The indebtedness I wanted to pay is what is shown by the paper, it was around a $100,000 and I wanted to make clearance of it somehow or other. I wanted to get relieved of that large indebtedness. Mr. Joe Ryan is my son-in-law and managed this building for me. I asked him to sell this property to whoever he could. He later advised me that he could sell this property to the Rose Estate by cancelling this note, this note was cancelled and I received in addition thereto, around $2100.00 or $2200.00, I think it was $2100.00; I think it was $2100.00; I don't think it was above $2100.00; maybe it was over $2100; I talked to Mr. Ryan over the telephone once or twice about being willing to convey the property to Rose Estate and cancellation of the $40,000.00 note on condition that I should be paid Twenty-one Hundred odd Dollars; I do not remember how many telephone conversations we had, whether or not he telephoned or wrote about it; anyway we had either written or oral conversation when I agreed to the contract and authorized Mr. Ryan to go ahead and close it up. *When I closed it up it was my desire to settle everything that existed between me and the Rose estate;* in executing the deed conveying the property to Mrs. Rose both my wife and myself executed the deed while in Dallas. I executed the deed for the sum of $2100.00 and the cancellation of the indebtedness *and supposed by doing that I settled all controversy that existed between me and the Rose Estate.*"

On redirect examination he testified: "In answering * * * this morning, I meant by saying settlement that is the items that were considered in the settlement, was the assumption of the $110,000.00 and the cancellation of the $40,000.00 note, and as far as clearing up anything else that didn't enter by mind. * * * I never settled or intended at any time to settle, the usurious payment question."

Mr. Reid, witness for defendant in error, who handled the trade with Mrs. Rose, testified: "It was a satisfactory adjustment; Mr. Ryan told me this was an adjustment of all differences between O'Keefe and the Roses."

It was undisputed that Mr. Ryan was acting as the duly authorized agent of O'Keefe in negotiating the sale of the building to Mrs. Rose.

The testimony was conflicting on the issue as to the market value of the building at the time it was conveyed to Mrs. Rose. There was very substantial evidence offered by plaintiff in error showing that such value was not in excess of $150,000. In fact, some of the testimony tended to show its value to be as low as $125,000. Taking into consideration the interest on the first lien, delinquent taxes in the sum of $4,000, the unpaid current operating expense of the building amounting to $2,274, and the allowance of a portion of the April rents in the sum of $500 to O'Keefe, it appears that Mrs. Rose paid approximately $158,000 for the building, or $8000 more than it was shown to be worth by the testimony of several competent witnesses.

■ No request was made for a finding as to the market value of the building at the time it was conveyed to Mrs. Rose. This being a subsidiary issue, it will be presumed in support of the judgment that the court found Mrs. Rose paid for the building a sum above its market value in excess of the amount of the alleged usurious interest. Article 2190, R. S. 1925.

■ The law is settled in this state that a contract which provides for usurious interest may be purged of the taint of usury by a subsequent agreement of the parties if such agreement be based upon a new or independent consideration. Gilliam v. Alford, 69 Tex. 271, 6 S. W. 757; Cotton States Building Co. v. Jones, 94 Tex. 497, 62 S. W. 741; Stout v. Nat. Bank, 69 Tex. 384, 8 S. W. 808; Whitlow v. Culwell, 16 Tex. Civ. App. 266, 40 S. W. 642.

Mr. Webb, in his Work on Usury, says: "As said by an accurate legal writer on the subject: 'It is not essential that the amount of the usury paid should actually be returned to the debtor; it is sufficient if he receives a valuable and bona fide consideration for the settlement and release of the usury; as where the debtor in payment of an usurious debt conveys property to the creditor at a price clearly exceeding its real value in consideration of the releasing the usury.' "

The same principle is recognized in Bomar v. Smith (Tex. Civ. App.) 195 S. W. 964, 975, in which Judge Talbot, discussing the elimination of usury by subsequent settlement, says: "The precise question does not seem to have been decided by any appellate court of this state, but we think the tenor of our decision indicates that, in order for a usurious contract to be purged of its usury by a new contract into which a new consideration has entered, the value of such consideration must be equal to the full amount of the usury."

■ It will be noted that upon cross-examination O'Keefe testified clearly and positively that in conveying the property to Mrs. Rose it was his intention to settle and liquidate all matters and claims between them. This testimony, standing alone, was not only sufficient to sustain an affirmative finding by the jury on the issue of settlement, but absolutely demanded such a finding. It is true the witness on redirect examination attempted to modify or explain his statement in regard to this matter. This merely presented an inconsistency in his testimony upon the point, which, like any other conflict, was within the peculiar province of the jury to reconcile. Texas & N. O. Ry. Co. v. Buch (Tex. Civ. App.) 102 S. W. 124; Austin Fire Insurance Co. v. Adams-Childers Co. (Tex. Com. App.) 246 S. W. 365; Young v. Blain (Tex. Com. App.) 245 S. W. 65, 66.

In the last-cited case there was involved a contradictory statement in the testimony of one of the parties to the suit. It was decided that this was a matter for the jury to determine. In passing upon the question the court stated: "But, even if there be an inconsistency in her testimony, the jury had the right to accept portions of it and reject other parts. It is their peculiar privilege to adjust inconsistencies in the evidence of a witness in case they develop."

The view expressed by Mr. O'Keefe on cross-examination was corroborated by his witness Reid, who testified that Mr. Ryan, the duly authorized agent of O'Keefe in negotiating the sale of the building to Mrs. Rose, stated to him during the course of the transaction that the adjustment being made was a satisfactory one and that it was "an adjustment *of all differences between O'Keefe and Rose.*"

■ In view of the condition of the record, as above shown, we are unable to say that it does not contain sufficient testimony to support the jury's finding that O'Keefe intended to settle and adjust all claims, including the usurious interest, with Mrs. Rose, by the conveyance of the building for the consideration agreed upon.

■ Defendant in error complained by proper assignment in the Court of Civil Appeals, and here complains, of the action of the trial court in refusing to permit him to testify that it was not his intention to settle his claim for usury by the conveyance of the building to Mrs. Rose. Error in refusing to permit the witness to answer the question propounded is a harmless one, as the record shows he did in fact testify that he had no intention of settling his claim for usury by the conveyance of the property to Mrs. Rose.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.