## J. M. HUBER PETROLEUM CO. et al. v. QUILLIN.

No. 4016.

Court of Civil Appeals of Texas. Amarillo.
April 26, 1933.

Rehearing Denied May 17, 1933.

Walter David and Kimbrough & Boyce, all of Amarillo, for appellants.

Morgan, Culton, Morgan & Britain, of Amarillo, for appellee.

JACKSON, Justice.

This suit was instituted by appellee, George E. Quillin, against the corporate appellants J. M. Huber Petroleum Company and the Dixon Creek Oil & Refining Company, to recover $3,800 alleged by appellee to be due him, as evidenced by certain written contracts.

The appellants answered separately by general demurrer, special exceptions, and general denial.

It was agreed by the appellants that no cross-action would be filed by the J. M. Huber Petroleum Company against the Dixon Creek Oil & Refining Company, but that in the event appellee recovered judgment for any sum against the J. M. Huber Petroleum Company, it should have a judgment for the same amount over against the Dixon Creek Oil & Refining Company.

The case was heard by the court without the intervention of a jury and at the close of the testimony the appellee took a nonsuit as to the Dixon Creek Oil & Refining Company and judgment was rendered that appellee recover from J. M. Huber Petroleum Company $4,243.33; that he take nothing against the Dixon Creek Oil & Refining Company; and that the J. M. Huber Petroleum Company recover of the Dixon Creek Oil & Refining Company the same amount, from which judgment this appeal is prosecuted.

The record shows that by a certain contract and supplement thereto Frank P. Jackson, trustee for the benefit of himself, J. D. Wrather, and George E. Quillin, entered into a contract to purchase crude oil from the Cockrell-McIlroy Oil Company. Thereafter Charles F. Sabourin, trustee, entered into a contract with said Jackson, Wrather, and Quillin by the terms of which the last named agreed to build a refining plant at Kingsmill, Tex., organize a corporation under the name of Navajo Refining Company, and transfer the contract with the Cockrell-McIlroy Oil Company for the purchase of crude oil, together with the plant, to said Navajo Refining Co. The Navajo Refining Company was organized and incorporated under the laws of New Jersey, the refining plant built according to the agreement, but the crude oil contract with the Cockrell-McIlroy Oil Company was canceled and no assignment thereof, or of the plant, was made to the Navajo Refining Company. All the owners of the plant and the organizers, officers, and directors of the Navajo Refining Company conveyed the plant to the J. M. Huber Petroleum Company and agreed to assign all their interest in the Navajo Refining Company for a consideration of $23,481.50, and the assumption of certain outstanding indebtedness. The part of the consideration to be paid to and received by each of the grantors is recited in the conveyance, among which is this recitation:

"The said J. M. Huber Petroleum Company further promises and agrees to pay or cause to be paid to George E. Quillin the further and additional sum of Thirty-Eight Hundred and no/100 ($3800.00) Dollars, without interest, out of the first net earnings of the Navajo Refining Company, said money to be paid at Amarillo, Texas, before any profits or dividends of any nature are declared or paid out of the earnings of said Navajo Refining Co."

Each item of the consideration was paid to the grantors, except the $3,800 recited in the above quotation and which is involved in this controversy.

About thirty days after the date of this conveyance to the Huber Petroleum Company, it secured an amendment of the charter of the Navajo Refining Company, changing the name to the Huber Refining Company. The plant was operated as the Huber Refining Company until November 15, 1930, on which date said company and the J. M. Huber Petroleum Company conveyed the plant to the Cockrell-McIlroy Oil Company in consideration, among other things of "the assumption and agreement to pay by the grantee herein, the balance due and owing Frank P. Jackson, J. D. Wrather, George E. Quillin and Charles F. Sabourin, trustee, respectively" under and by virtue of a contract between them and the J. M. Huber Petroleum Company. The instrument conveys to the Cockrell-McIlroy Oil Company the entire plant and its appurtenances, whether the title thereto is in the Huber Refining Company or the J. M. Huber Petroleum Company, together with "all oil in storage belonging to Huber Refining Company and all products now on hand, refined or manufactured by said refinery, together with all the Huber Refining Company's accounts receivable, cash on hand and in bank, it being hereby intended to convey to Cockrell-McIlroy Oil Co. all assets of every kind and character owned by Huber Refining Company wherever situated and all equipment, machinery, goods, chattels and merchandise purchased or owned by J. M. Huber Petroleum Company for use in connection with the operation of said refinery or for the account of the said Huber Refining Company."

It also appears from the record that the Dixon Creek Oil & Refining Company had acquired the property and rights purchased by the Cockrell-McIlroy Oil Company and assumed all of its obligations pertaining to said purchase.

The appellants challenge as error the action of the trial court in overruling their respective general demurrers, because the contract sued on, a copy of which was attached to the petition, provided for the payment of the $3,800 out of the first net earnings of the Navajo Refining Company and appellee failed to allege that any net earnings had been made out of the operation of the plant either as the Navajo Refining Company or the Huber Refining Company.

The appellee alleged that if there were no profits made with which the $3,800 should have been paid under the contract, that the J. M. Huber Petroleum Company, having sold the plant and its assets and placed it beyond its power to comply with the condition of the contract for payment, it thereby became immediately bound and liable to pay said sum in money.

[1] The court filed no findings of fact, and, if this allegation constitutes a cause of action and is supported by the evidence, the judg-ment must be affirmed, whether or not such assignment presents error. Hunnicutt v. Lee et al. (Tex. Com. App.) 38 S.W.(2d) 572; Williams et al. v. Henderson County Levee Improvement District No. 3 (Tex. Com. App.) 36 S.W.(2d) 204; Lipscomb v. James Leffel & Co. (Tex. Civ. App.) 44 S.W.(2d) 1008.

The holders of the legal title to the physical properties of the plant constituted the organizers, officers, and directors of the Navajo Refining Company and, acting in their individual and representative capacities, sold said plant and said corporation to the J. M. Huber Petroleum Company. This company, by amendment, changed the name from the Navajo Refining Company to the Huber Refining Company.

■ "The fact that a corporation changes its name does not affect its identity. Neither does it release it from the obligation to pay its debt. * * * A change of the corporate name affects neither its identity nor its rights and neither lessens nor adds to its obligations." 5 Thompson on Corporations (3d Ed.) § 3220.

■ After the change of the name, the J. M. Huber Petroleum Company operated the plant under the name of Huber Refining Company, and this change in name in no way affected the obligation of the J. M. Huber Petroleum Company to pay appellee the $3,-800. The J. M. Huber Petroleum Company and the Huber Refining Company, on November 15, 1930, sold the plant to the Cockrell-McIlroy Oil Company and conveyed to it "all assets of every kind and character owned by the Huber Refining Company wherever situated and all equipment" etc., purchased or owned by the J. M. Huber Petroleum Company for use in connection with the operation of the plant or for the account of the Huber Refining Company. By this transaction the J. M. Huber Petroleum Company put it out of its power to obtain any net earnings from the operation of the Navajo Refining Company or its successors, the Huber Refining Company.

In Marvin v. Rogers, 53 Tex. Civ. App. 423, 115 S. W. 863, 865, the court says: "It seems clear that, where a contract is made which is performable at the time of the occurrence of a future event, the law imputes to the promisor an agreement that he will put no obstacle in the way of the happening of that event, and that he will hold himself in readiness to co-operate where his co-operation is a necessary element in the happening of the contingency. If, in violation of this implied covenant on his part, he does something which prevents the happening of the event, the contract becomes absolute and must be performed as if the event had occurred. Bradley v. Benjamin, 46 L. J. Q. B., 590; Jones v. Walker, 13 B. Mon. (Ky.) 163, 56 Am. Dec. 557; Dill. v. Pope, 29 Kan. 289; Wolf

v. Marsh, 54 Cal. 228; Bolles v. Sachs, 37 Minn. 315, 33 N. W. 865; Teachenor v. Tibbals, 31 Utah, 10, 86 P. 483."

To the same effect are the holdings in Johnson v. Sharp et al., 56 Tex. Civ. App. 80, 120 S. W. 518, writ refused; Markowitz v. Greenwall Theatrical Circuit Co. (Tex. Civ. App.) 75 N. W. 74; Id., 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Arlington Heights Realty Co. v. Citizens' Railway & Light Co. (Tex. Civ. App.) 160 S. W. 1109; 13 C. J. 650 § 724; 5 Page on Contracts, page 5136.

There is no question but what appellee and his associates performed their part of the contract with the J. M. Huber Petroleum Company and that it sold and disposed of the property to the Cockrell-McIlroy Oil Company without the knowledge or consent of appellee.

In James W. Lovell et al. v. St. Louis Mutual Life Ins. Co., St. Louis Life Ins. Co. and Wm. Morrow, 111 U. S. 264, 4 S. Ct. 390, 395, 28 L. Ed. 423, the Supreme Court of the United States says:

"That the complainant was under no obligation to continue his insurance in the new company, we think is equally clear. He had nothing to do with that company; it was a stranger to him. It is true that it received all the old company's assets, and assumed all its obligations on policies and otherwise; and the complainant was relegated to the new company for the obtainment of his rights, whatever they were. But that was a transaction between the companies themselves, with which he had nothing to do; and under such a total change of relations and parties, it would be most unreasonable that he should be compelled, against his will, or with the alternative of abandoning all his rights, to continue all his life to fulfill an executory contract by the payment of premiums to a company to which he was a total stranger, and in which, perhaps, he reposed no confidence whatever, or to take a paid-up policy in such company. * *. *

"The old company totally abandoned the performance of its contract with the complainant by transfering all its assets and obligations to the new company, and as the contract is executory in its nature, the complainant had a right to consider it as determined by the act of the company, and to demand what was justly due to him in that exigency. Of this we think there can be no doubt. Where one party to an executory contract prevents the performance of it, * * * the other party may regard it as terminated, and demand whatever damage he has sustained thereby."

See, also, Roehm v. Horst. 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Proctor v. Union Coal Co., 243 Mass. 428, 137 N. E. 659.

■ The assignment presenting as error the admission of certain testimony is not tenable, the case having been tried before the court and independent of the testimony complained of the evidence was sufficient to warrant the conclusion of the court.

The judgment is affirmed.