**UNDERBERG v. YATES.**

**No. 5707.**

Court of Civil Appeals of Texas. Amarillo.

April 15, 1946.

Rehearing Denied May 13, 1946.

Storey, Storey & Donaghey, of Vernon, for appellant.

Warlick & Bunnenberg, of Vernon, and Walter Nelson, Jr., of Wichita Falls, for appellee.

BOYCE, Justice.

The appellee, G. S. Yates, brought this suit against the appellant, J. J. Underberg, to recover damages for breach of an oral contract. By the terms of the contract Underberg was to give Yates a one-third interest in a business owned by Underberg, known as the Wichita Novelty Company, when the then existing indebtedness of the business had been paid out of its profits, provided Yates continued to work for the business at a salary of $50 per week until the contingency occurred. Underberg breached the contract by selling the business before sufficient profits to pay its indebtedness had been earned. The case was tried to a jury, which answered the special issues submitted in favor of appellee. On the verdict appellee recovered judgment against appellant for the sum of $3600.

Appellant contends that the trial court erred in overruling his special exception to the effect that the petition alleged a partnership between Yates and Underberg and the suit was therefore premature in the absence of an accounting. The prematurity of the suit was also urged in the form of a motion to abate it at the close of all the evidence. The motion was likewise overruled. The first point of error assails the trial court's action in these particulars.

The material allegations of appellee's petition are substantially as follows:

The Wichita Novelty Company since 1931 has been engaged in the installation and maintenance of music machines in eating houses and places of entertainment in Wichita Falls. From its inception the appellee had been employed by the owners of the Novelty Company and had done every character of work incident to the conduct of the business. During the period from 1931 to March 1943, before appellant bought the business, appellee had formed close personal and business relations with people in whose establishments the machines might be profitably installed. Because of these relations appellee's services in the business were valuable. Appellant bought the business in March 1943 and continued appellee in its employ. Shortly after purchasing the business, appellant made a written contract with Bert Davis, by the terms of which Davis became a partner in the business, owning a one-half interest. After the partnership was entered into, Davis and appellant made an oral contract with appellee in which they agreed to give appellee a twenty-percent interest in the business when the net earnings of the firm retired its then indebtedness, provided appellee would remain with the business at a salary of $50 per week until such indebtedness was paid. In December 1943 appellant and Davis had a disagreement which resulted in the dissolution of the partnership. About the time appellant and Davis had their dispute, appellant informed appellee that upon the termi-

nation of Davis' association with the Novelty Company appellant would give appellee a one-third interest in the business when its indebtedness was discharged, provided appellee would remain with the Novelty Company at a salary of $50 per week until the existing indebtedness was paid out of profits. Appellee accepted this proposal and remained with the Novelty Company until it was sold by appellant in March 1944. The business was profitable during all the period in which appellant was interested in it, and would have been worth $30,000 when the indebtedness was discharged, which would have occurred in less than eighteen months. The sale of the business by appellant rendered performance of the contract impossible and thereby breached it, to plaintiff's damage in the sum of $10,000.

The testimony introduced by appellee relative to his association with the business, the partnership agreement between appellant and Davis, the subsequent agreement between appellant and appellee, and the sale of the business by appellant conforms to the allegations.

■ As we construe these allegations, appellee had no present right of ownership or interest in the assets of the business or the profits to be derived therefrom. Appellant called the alleged arrangement relative to the acquisition by appellee of an interest in the business an "anchor." The vesting in appellee of title to a one-third interest in the assets and of a right to a share of the profits was contingent upon the prior payment of the debts of the business out of such profits and the continuance of appellee's services for the stipulated weekly compensation. Such a relation does not create an existing partnership, but rather two relations, that of employer and employe, and of parties to an executory contract to form a partnership. Millers' Indemnity Underwriters v. Patten, Tex.Civ. App., 238 S.W. 240, affirmed Tex.Com. App., 250 S.W. 154; New Amsterdam Casualty Co. v. Harrington, Tex.Civ.App., 11 S.W.2d 533, writ of error dismissed.

There being no partnership, it follows that there were no partnership accounts to be settled. The exception and the motion were properly overruled.

Appellant's second and third points of error, respectively, challenge the trial court's action in overruling his motion for a peremptory instruction and in overruling his motion for a judgment notwithstanding the verdict. These points of error are considered together because they are grounded upon the same theories.

The first of these is that there was no consideration for appellant's promise to give appellee a one-third interest in the business after its indebtedness had been discharged out of profits, for the reason that appellee was already obligated to remain with the business under his contract with appellant and Davis.

At the time he bought the Wichita Novelty Company, Underberg was engaged in the operation of a similar business at Vernon, where he lived. The Vernon business required most of his time and personal attention. This situation apparently brought about the partnership contract between Underberg and Davis. This contract recited that Davis was an experienced man in the operation of a business of that type and that the agreement was made in order that Davis might operate the business. The contract obligated him to devote "as much of his time as possible" to the conduct of the Novelty Company and to keep such books as were necessary to reflect its condition. The firm employed appellee at a weekly wage of $50.00 and the promise of a twenty-percent interest in the business when its existing indebtedness had been paid out of profits, provided appellee would stay with the firm until the indebtedness was so paid. Friction subsequently developed between Underberg and Davis and at the expiration of about ten months the partnership was dissolved, Davis retired from the business, and appellant took it over.

About a month before Davis left the firm, Underberg informed appellee that Underberg had "invited" Davis to leave and that if appellee would stay with Underberg, the latter would give appellee a one-third interest in the business when its profits had paid it out. Appellee accepted this proposal.

■ We disagree with appellant that Yates was bound to remain with the busi-

ness as his employe after the dissolution of the firm. Yates' contract of employment was with the firm. Davis, acknowledged to be experienced in a business of that character, was its manager. At the time appellee obligated himself to remain with the firm until the business paid out, Davis was also obligated to devote his time to the business; appellee was to benefit from Davis' efforts and experience. When the firm dissolved, Davis' services were lost to the business. Appellee's employers, Underberg and Davis, had, by their voluntary action, put it out of their power to obtain by their joint efforts the profits which would pay out the business and mature appellee's right to an interest therein. The action of the partners having prevented the performance of their contract with appellee, he had the right to regard it as terminated. Marvin v. Rogers, 53 Tex.Civ.App. 423, 115 S.W. 863; J. M. Huber Petroleum Co. v. Quillin, Tex.Civ.App., 60 S.W.2d 261, writ of error refused. Appellee was therefore at liberty to make a new contract of employment with Underberg.

The second reason advanced by appellant for sustaining his motions for a peremptory instruction and for a judgment notwithstanding the verdict is that there was no competent evidence to support certain of the jury's findings. In answer to special issues the jury found that had the business not been sold by appellant, it would have paid out in thirty-six months and when paid out would have had a reasonable cash market value of $10,800. Upon these findings, appellee's damages were adjudged to be $3600. The propriety of this method of ascertaining damages is not questioned and for the purposes of this appeal it will be assumed to be correct. The objection is that there is no competent testimony in the record to support the jury's finding that the business would have paid out.

Documentary evidence shows that appellant paid $27,163.80 for the business and sold it thirteen months later for $28,000. To pay for the business appellant borrowed $19,350 from the Herring National Bank at Vernon. This indebtedness had been reduced to $9350 at the time the business was sold. According to appellant's testimony, $9000 of the $10,000 paid on the note had been derived from the receipts of the Novelty Company. During the time he was connected with the business Davis drew $4700 salary and appellant charged the business with a salary of $4687 to himself to offset Davis' withdrawals. Appellant testified that he made a net profit of $301.30 on his purchase and sale of the business over and above his charges against it for interest on money he had advanced to it, salary to himself, adjustments for exchanges of machines between it and appellant's Vernon business, and various other items. Before Davis' connection with the business and afterward, appellant did not make a salary charge. The bank book of the Novelty Company was introduced in evidence; it showed deposits of $25,338.08 during the thirteen-month period. There was testimony from appellee and Davis that the bank deposits did not truly reflect the gross income in that many expense items were paid out of cash taken from the music machines and not deposited in the bank. Appellant corroborated this testimony, stating that the gross receipts of the business while he was connected with it amounted to about thirty thousand dollars.

This evidence, in our opinion, supports the jury finding that the business would have paid out. In interpreting it, we are required to view it in the light most favorable to appellee and to indulge in his favor every legitimate conclusion which might be drawn from the facts proved. Roddy v. Citizens' State Bank of Copeville, Tex.Civ.App., 11 S.W.2d 652; Jones v. Jones, Tex.Civ.App., 41 S.W.2d 496, writ of error dismissed; Vontsteen v. Rollish, Tex.Civ.App., 133 S.W.2d 589, writ of error refused.

Appellant's third contention under his second and third points of error is that the uncontradicted evidence is contrary to the jury's finding that appellee did not consent to the sale of the Wichita Novelty Company by appellant.

Appellee did not know anything about the sale until three or four days after it occurred. He testified that he did not consent to it. He also testified that when in-

formed by appellant that the sale had been made, he probably said, "It is all right with me." In explanation of this statement, he further testified, "Of course, I did not know what to do if he would go ahead and just say there was nothing I could do about it. I didn't know how I was going to handle him then."

Granting that appellee's testimony on the point is inconsistent and contradictory, an issue for determination by the jury was presented. The trial court was not authorized to adopt that view of the testimony most unfavorable to appellee and withdraw the issue from the jury. Farmers' Gin Co. v. Smith, Tex.Civ.App., 28 S. W.2d 839; Rose v. O'Keefe, Tex.Com. App., 39 S.W.2d 877.

For the reasons stated, appellant's second and third points of error are overruled.

The judgment is affirmed.