Frank T. Jordan, Appellee, v. Heino F. Busch et al., Defendants. Appeal of Heino F. Busch, Appellant.

Gen. No. 38,563.

Opinion filed April 22, 1936. Rehearing denied May 5, 1936.

FISHER & FISHER, of Chicago, for appellant; GEORGE A. GORDON and ARTHUR S. FLANK, both of Chicago, of counsel.

MILFORD H. OLDS, of Chicago, for appellee; CHARLES E. LEWIS and HUGH J. McCARTHY, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment entered in the superior court in the sum of $12,200 and costs in favor of the plaintiff Frank T. Jordan and against the defendants, Heino F. Busch and Charles Venn, as damages claimed by plaintiff because of a breach of contract. James J. Redding was not served with process and did not appear. The case was tried by the court without a jury.

From the facts it appears that the plaintiff, a lawyer, together with defendants Busch, Venn and Redding, promoted a brewery enterprise in the spring of 1933 and secured an option to purchase a brewery plant at Rock Island, Illinois. Busch denied that Jordan promoted or secured an option with the defendants.

On June 21, 1933, the Rock Island Brewing Company was organized with 110,000 shares of preferred and 55,000 shares of common stock. Busch, Venn and Redding conveyed their option to the corporation and they obtained therefor all of the common stock, or 18,333⅓ shares each which was later reduced to 14,066 shares each. Busch and Redding were employed by the corporation as sales managers and Venn was employed as

plant manager. Busch was elected a director and vice president. Venn and Redding held no office.

On July 7, 1933, plaintiff and the defendants entered into a contract, wherein Busch, Venn and Redding, the defendants herein, are named as parties of the first part and Frank T. Jordan, plaintiff herein, is named as the party of the second part. The agreement further recites that the parties of the first part are the owners of a substantial interest in certain brewery property located at Rock Island, Illinois, and that the party of the second part claims an interest in said property and that the parties have reached this agreement relating to the extent of the interest of the party of the second part.

The contract further provides that the party of the second part agrees to and does assign, transfer, relinquish and release unto the parties of the first part all of his right, title and interest of every nature and description in and to said brewing property located in Rock Island, Illinois, and in consideration thereof, the parties of the first part jointly and severally agree to pay to the party of the second part the sum of $12,500 in 59 equal monthly instalments (without interest thereon) of $208.33 on the first day of each and every month commencing on the first day of September, 1933. Said payments to be subject to adjustment as hereinafter provided.

The contract further provided that the above payments to be made by the parties of the first part to the party of the second part, shall be made only from the salaries and dividends received by the parties of the first part on their interest in said brewery property in Rock Island, Illinois. It further provided that in the event the total monthly income of all the parties of the first part, received by them as salaries and dividends, shall be less than $3,000 then and in that event the current monthly instalment payment to be made to the party of the second part for that

month shall be reduced in the same proportion as the total monthly income shall bear to said sum of $3,000. And, in the event the said total monthly income shall exceed the sum of $3,000, then and in that event the current monthly instalment payment to be made to the party of the second part for that month shall be increased in the same proportion as the total income for that month shall bear to said sum of $3,000; but in no event shall the total of the amounts paid to the party of the second part exceed the said sum of $12,500, nor shall any of said amounts bear any interest.

It was further provided in the contract that such compensation as the party of the second part may receive for legal services he may render to the parties of the first part, in connection with the said Rock Island Brewery property, or the corporation or other entity formed to conduct the business of said Rock Island brewery property aforesaid, during the five-year period commencing August 1, 1933, next ensuing, shall be credited to the parties of the first part as payments on account of the sum of $12,500.

The contract further provided for the payment in case of the death of the party of the second part. It was agreed that during the lifetime of the party of the second part his interest is personal, but in the event of his death prior to the payment in full of moneys hereinbefore provided to be paid by the parties of the first part, then and in that event, the moneys thereafter payable to the party of the second part shall be paid to his heirs at law and that neither he nor his heirs will assign, transfer, hypothecate or record this agreement without the written consent of the parties of the first part and that in the event he or his heirs assign, transfer, hypothecate or record said agreement without such written consent, this agreement and the rights of the party of the second part and his heirs herein shall become null and void.

The contract further provides that the agreement is predicated upon the consummation of the acquisition of said Rock Island brewery property by the parties of the first part or by the corporation which they shall proceed to have organized, and in the event the parties of the first part, or said corporation shall not acquire said brewery, this agreement shall be null and void.

It appears that on March 13, 1934, at the annual meeting of the corporation, Busch and Redding resigned as officers and as employees of the corporation; that they entered into contracts with certain investment bankers whereby they each traded 14,166 shares of common stock in the corporation for 3,000 shares of preferred stock and that the bankers agreed to repurchase from each of them their 3,000 shares of preferred stock for $18,750. Busch and Redding each received $3,750 in cash on account thereof at the time of the agreement and thereafter they each received substantial payments on the unpaid balance of the purchase price. Busch denied that the stock sold by him and Redding was all the stock they owned when sold. He further denied that he had an interest in the corporation which would entitle him to dividends, although the amount thereof, if any, does not appear.

Venn, one of the other defendants, sold his stock at the time of incorporation and had no interest in the corporation which would entitle him to dividends. In March, 1935, long after plaintiff brought his suit, Venn resigned as plant manager of the corporation.

It appears that plaintiff was, at all times, ready to perform legal services for the defendants in connection with the corporation, but he was not requested to render any services. Busch claims that under the contract sued upon, defendants are entitled to be credited with such compensation as plaintiff may receive for legal services he may render the corporation during the five-year period from August 1, 1933 to July 31,

1938, consequently, the amount of such credits cannot be ascertained until July 31, 1938, and therefore plaintiff's action is premature.

The three defendants received a total sum of $10,219.92 as salaries from the corporation from June 25, 1933 to March 13, 1934. They each received the total sum of $3,406.64, $2,606.64 in cash and $800 in preferred stock of the company. In February, 1934, they each paid plaintiff $100, or a total of $300 on account of the contract. According to the defendants the total amount due plaintiff was $709.70, less $300 paid on account, or $409.70, which amount was tendered by Busch in open court.

It is the claim of the plaintiff that the defendants, by their conduct, made impossible the performance of a condition precedent, upon which their liability, by the terms of the contract, was made to depend.

The defendants contend that the contract is not an absolute agreement to pay, but is an agreement to pay out of a special fund, to-wit, "salaries and dividends" and that therefore the defendants are only indebted to the plaintiff out of this fund in the sum of $409.70 and that the alleged impossibility of receiving further "salaries and dividends" is not attributable to their fault and that plaintiff's action was prematurely brought.

There is little difference in the allegations of the parties as to the facts. Although it is contended by some of the defendants that Jordan had no interest, the contract recites that he did have, but that it was purchased by the defendants and the only point that is controverted is as to the method of payment and when.

The contract provides for the payment by the defendants to the plaintiff of a certain sum per month out of "salaries and dividends" received by the promisor "on their interest" in said brewery prop-

erty in Rock Island, Illinois. There is no doubt that if the method of payment, as provided in the contract, shall be from a certain fund which is specified in the contract, then the plaintiff cannot recover generally from the defendants, but is restricted to the payment from the specified fund.

Plaintiff takes the position that the defendants having sold their interest in the corporation, by the disposal of their stock, produced the effect of alienating the source of the funds from which the payments were to be made. There can be no denial that the defendants having sold their stock, which of course would alienate the possibilities of a dividend, and ceasing to be employed by the company which would eliminate the possibility of salary, did for all practical purposes prevent the carrying out of the contract by its terms. Under these circumstances the plaintiff could not hope to recover according to the terms of the contract.

The rule of law is that when a party agrees to pay out money from a fund which is derived only from a certain source, this condition is for the benefit of the promisor and, if he alienates the source of that fund, he cannot escape liability. It is a principle of fundamental justice that if a promisor himself is the cause of a failure of performance either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure. One who agrees to pay for goods on delivery, cannot set up the lack of delivery when caused by his own act. Williston on Contracts, Vol. II, section 677. In *St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.*, 201 U. S. 173, the court said: "In general, when one party by his fault prevents the other party to a contract from entitling himself to a benefit under it according to its terms, the former is liable for the value of that benefit less the value or cost of what the plaintiff would have had to do to get it."

In *City of Chicago v. People ex rel. Norton,* 56 Ill. 327, the court at page 333, said:

"If a person promise to pay a sum of money *when* he shall collect his demands of another, then if it appear that he had no demands, or if he have and fail to use due diligence to collect them, in either case the promise may be enforced as absolute."

It is further contended by defendants that although they have sold their stock and resigned as officers and directors of the company and have no further interest in the company, the agreement provides that any money plaintiff may receive for legal work performed for the company should be deducted from the sum named in the contract and plaintiff should wait for a period of five years to see if the company would give him any legal work to do. The company has not done so in the past and there is no evidence or even an intimation of their intention to do so in the future. There can be but little doubt that, regarding the appointment of plaintiff as legal counsel, the parties contemplated the control of the company would remain in the defendants. The record shows that other counsel represent the new owners of the corporation and doubtless they would have no occasion to employ the plaintiff. By selling the interest and control in the property, they voluntarily put it out of their power ever to realize any dividends from the brewery or to employ the plaintiff. Consequently, the payments due under the contract became due and payable *eo instanti. Wolf v. Marsh,* 54 Cal. 228.

It seems clear that where a contract is made which is performable at the time of the occurrence of a future event, the law imputes to the promisor an agreement that he will put no obstacle in the way of the happening of that event and that he will hold himself in readiness to co-operate where his co-operation is a necessary element. If, in violation of this implied

covenant on his part, he does something which prevents the happening of the event, the contract becomes absolute and must be performed as though the event had occurred. *Marvin v. Rogers,* 53 Tex. Civ. App. 423, 115 S. W. 863.

We are of the opinion that the payments under the contract became due upon the sale by the defendants of their stock in the company and the surrendering of their control of the same and we are further of the opinion that the amount of damages found to be due and owing to plaintiff was correctly decided by the trial court.

For the foregoing reasons the judgment of the superior court should be and the same hereby is affirmed.

*Judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.