**Kenneth J. Hansen, Plaintiff-Appellee, v. Kenneth Johnston, Defendant-Appellant.**

**Gen. No. 68–153.**

Second District.

June 16, 1969.

Rehearing denied August 1, 1969.

Nack, Richardson and Nack, of Galena, for appellant.

Stewart R. Winstein, and Dorothea O'Dean, of Rock Island, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Defendant appeals from an adverse judgment for $30,000, arising from a breach of contract action heard by the court.

The court found for plaintiff on the theory that the defendant had made the following contract impossible of being performed:

"AGREEMENT

"This agreement dated May 22, 1963, by and between Kenneth J. Hansen, Kenneth Johnston and Chestnut Hills Resort, Inc.

"Witnesseth

"1. Kenneth J. Hansen hereby agrees to vacate the premises he now occupies at Chestnut Hills Resort,

Inc., within one week from the date of this agreement.

"2. Kenneth Johnston hereby agrees that he will pay to Kenneth J. Hansen for all his right, title and interest in and to any stock that he may own in Chestnut Hills Resort, Inc. the sum of $30,000.00. This sum shall be paid as follows:

"(a) If Kenneth Johnston secures financing in the sum of $350,000 he will pay the $30,000 to Kenneth J. Hansen when the loan proceeds of $350,000 are disbursed.

"(b) If Kenneth Johnston is unable to secure financing in the sum of $350,000 then the $30,000 will be paid after all corporate debts due of this date are repaid. It is agreed between the parties that in this instance the $30,000 will be paid from corporate profits.

"3. The parties agree that Kenneth J. Hansen shall have the right to secure a mortgage for the Corporation for $350,000 and if he succeeds he shall receive his $30,000 as hereinabove provided.

"4. Kenneth J. Hansen shall be released from all personal liability to the State Bank of Freeport and the Elizabeth State Bank. Any collateral at these banks belonging to Hansen shall likewise be released.

"5. Hansen hereby agrees to release to Johnston any and all records in his possession pertaining to Chestnut Hills Resort, Inc.

"6. Hansen hereby agrees to resign as an officer of Chestnut Hills Resort, Inc. and further agrees that he has no right, title or interest to any property of the said Chestnut Hills Resort, Inc.

"7. The Chestnut Hills Resort, Inc. hereby agrees to pay all legitimate outstanding debts of the Corporation as of this date and to relieve Hansen of all responsibility for the same.

"8. Hansen hereby agrees that he will not go into the ski business or ski resort business in any capacity or be employed by a ski lodge or ski resort in any capacity, within a radius of 50 miles from the location of Chestnut Hills Resort, Inc. for a period of 18 months. This provision shall not prohibit Hansen from selling or manufacturing ski equipment within the above defined area.

"9. Hansen and Johnston agree that if Chestnut Hills Resort, Inc. shall be sold before Hansen receives his $30,000, then Hansen and Johnston shall participate equally in the selling price, after the payment of all corporate debts and obligations. If Hansen has received the $30,000 he shall have no interest in the selling price. Johnston shall have the right to pay the $30,000 at any time after the execution of this agreement.

"In witness whereof the parties hereto have placed their hands and seals the day and date first above written.

/s/ Kenneth J. Hansen (Seal)
/s/ Kenneth Johnston (Seal)
Chestnut Hills Resort, Inc.
By /s/ Kenneth Johnston
President"

On August 3, 1964 defendant recorded a trust deed on the property in the amount of $485,000, which secured a note payable to bearer in monthly installments of $3,-474.79 with 6% interest, the entire amount being due by August 1, 1984, if not sooner paid.

It appears from the testimony that Hansen as a partner with another and later as a principal stockholder, had operated the ski lodge and resort. There were financial difficulties and lack of operating capital which threatened the continuance of the venture. Hansen pledged his stock in the corporation to Johnston to secure over $280,000 which Johnston had avanced to the corporation. Johnston also acquired other outstanding stock of the corporation.

The operation of the business was not going well, Hansen and Johnston could not agree on management—the former wanting to make a smaller winter operation, the latter to expand and upgrade the facilities and to promote a more sophisticated year-around facility.

Hansen stayed in possession of an apartment at the lodge and refused to vacate as requested by Johnston.

As of the date of the agreement the corporate debts were approximately $205,000, and Hansen was individually liable for a portion of this amount. In addition, there was the cost of a sixty room addition to the motel and furnishings in the amount of $200,000 represented by advances of Johnston. After that date a swimming pool was completed, air conditioning installed and the dining room and bar finished. The cost of these items was some $50,000.

The $485,000 note was made up of that $50,000, corporate debts, then reduced to $85,000, and the moneys advanced by Johnston both before and after the May 2 agreement.

The agreement was typed out in the office of the lodge by an attorney who was Johnston's personal counsel as well as that of the corporation. Hansen was not represented by an attorney. After the execution of the agreement Hansen vacated the apartment on the premises.

Defendant testified that the business at the time of trial was presently losing money, possibly $20,000 the last year, and that he had not been able to secure financing or sell the property.

Defendant claims that the judgment below is erroneous because none of the contingencies expressed in the agreement have been fulfilled and that the agreement has not become impossible of performance as to any one or all of the conditions. He suggests that the agreement be found capable of being performed and that we determine a reasonable time within which performance is to occur.

The principal issue is whether the recording of the $485,000 trust deed made the agreement impossible to perform. Defendant argues that it was only sound business practice to secure himself for advances made to the corporation and that in any event the trust deed should be considered legally subordinate to the agreement, and, if not, we should consider that he expressed a willingness to subordinate the trust deed in a post-trial motion.

██ It is clear that when performance of an agreement is rendered impossible by the willful acts of one of the contracting parties, the agreement to pay becomes absolute. Foreman Trust & Savings Bank v. Tauber, 348 Ill 280, 286, 180 NE 827 (1932).

And it seems apparent here that, unless the trust deed was subordinated to the agreement, the recording of the instrument (which included some debts contemplated to be repaid from the $350,000 financing mentioned in the agreement) would render the securing of the expressed financing, or a sale of the property, practically impossible.

At one point in the hearing Johnston was asked on the witness stand whether he would be willing to release the trust deed by payment of $350,000. Johnston's attorney objected to the question. There is nothing in the record to indicate any later willingness to subordinate the trust deed during the course of trial. While defendant suggests that he believed that the trust deed was legally subordinate to the agreement, he cites no authority to support this position and we know of none. We agree

with the trial judge that the offer made at the post-trial hearing was ineffective.

Johnston, however, argues that even assuming the trust deed made a loan impossible that there are other contingencies still available, sale or profits, which are not impossible. He refers to the quotation in the Restatement of Contracts, section 469: "Impossibility of performing one or more but less than all of a number of performances promised in the alternative in a contract discharges neither the duty of the promisor if by the terms of the contract he had the privilege of choice, nor the duty of the promisee if he had that privilege, but merely destroys or limits the possibility of choice . . . ."

Both parties are in agreement that the contract under the circumstances should be construed against the defendant whose attorney drew it. Marshall Field & Co. v. J. B. Noelle Co., 81 Ill App2d 409, 414, 226 NE2d 454 (1967). The contract was silent and ambiguous as to the substantial improvements made subsequent to the agreement and their relationship to any sale price or amount of loan required; to the effect of these items on computing net income accruing upon the improvements and impliedly computing profits; to the time for performance; and the result of non-occurrence of the contingencies.

These ambiguities, in any practical sense, prevented the alternative conditions from amounting to possible avenues of recovery.

It should be noted that the alternatives are truly under the control of Johnston whereas the securing of the finances by Hansen is the only condition which would be clearly under Hansen's control.

■ The quotation in the Restatement of Contracts, supra, does not apply to the facts of this particular case. The reference to Glidden Co. v. Hellenic Lines Ltd., 275 F2d 253 (1960) makes clear that section 469, supra,

refers to cases where one of two or more alternatives to completing a contract becomes impossible due to some circumstances not within the control of the parties. A duty is imposed by law upon a party not to interfere at all with the completion of the agreement by the opposite party. Levy & Hipple Motor Co. v. City Motor Cab Co., 174 Ill App 20, 25 (1912) ; Levy v. American Automobile Ins. Co., 31 Ill App2d 157, 164–165, 175 NE2d 607 (1961) ; Jordan v. Busch, 285 Ill App 217, 225, 226, 1 NE2d 745 (1936).

██ We hold that the trial judge properly found that defendant by his own acts made it impossible for plaintiff to retain any real ability to secure the benefits of the contract, thereby making the liability absolute.

We therefore affirm.

Affirmed.

ABRAHAMSON and DAVIS, JJ., concur.